CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/25/2026

LAURA A. AUSTIN, CLERK
BY:  s/ ARLENE LITTLE
       DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

FRANK VEGA,

*Plaintiff,*

v.

FLEET LABORATORIES, ET AL.,

*Defendants.*

CASE NO. 6:25-CV-00084

MEMORANDUM OPINION & ORDER

JUDGE NORMAN K. MOON

Plaintiff Frank Vega ("Vega")—a former employee of Fleet Laboratories ("Fleet")—is suing his former employer and several of its employees, alleging racial discrimination, hostile work environment and retaliation in violation of 42 U.S.C. § 1981.[1] *See* 2nd Am. Compl., Dkt. 28. Defendants move to dismiss Vega's claims with prejudice. Dkts. 33, 34. For the reasons that follow, Defendants' motion will be granted.

### I.       BACKGROUND

Vega, who is Latino, alleges that on November 6, 2024, a supervisor, Patricia Tinsley ("Tinsley"), referred to him as an "old ass nigger," in front of other colleagues. Dkt. 28 ¶ 23. According to him, another supervisor, Dorothy Chambers ("Chambers"), scolded Tinsley by telling her she "needed to go back to church." *Id.* ¶ 31. Chambers then told Vega not to "pay any mind to what [Tinsley] called [him], [because] she didn't mean anything by it." *Id.* ¶ 31. Vega

---

[1]      Vega alleges he was employed by Kelly Service, a staffing agency, and was placed with Fleet by that staffing agency. Dkt. 28 ¶ 13. This allegation suggests that Vega may not have been one of Fleet's employees. However, for the purposes of this Memorandum Opinion and Order, the Court will assume, as alleged in the Second Amended Complaint, that Fleet employed Vega.

protested, reminding Chambers that Tinsley's comment was "racist, wrong, and offensive." *Id.* ¶ 32. Vega alleges that from that moment on Tinsley and Chambers "subjected him to hostile treatment," by "ignor[ing] him," "communicat[ing] with him in a negative tone of voice," and "not mak[ing] eye contact with him." *Id.* ¶¶ 34–35.

Vega alleges that on November 18, 2024, a supervisor named Gino Rucker ("Rucker") gave Vega a gift for "doing good work." *Id.* ¶¶ 49–55. He also alleges that on December 2, 2024, he was called into Rucker's office to assist in a "harassment complaint investigation" involving Chambers and another temporary employee named "Tre." *Id.* ¶¶ 56–58.

On December 9, 2024, Vega was called into Rucker's office again and asked whether he "want[ed] to work [at Fleet]," because he was not "signed off" to operate any of the equipment. *Id.* ¶¶ 59–61. Vega told Rucker and another supervisor, Kenisha Staten ("Staten"), that he knew how to operate the Case Packing Coder and Carton Coder and that Chambers had witnessed him operating those machines. *Id.* ¶¶ 63–68. Following the meeting, Vega saw Chambers and asked her to tell Rucker and Staten that he could operate certain equipment. *Id.* ¶¶ 69–71. Chambers assured him that she would "talk to them about it." *Id.*

Without any further notice or discussions, Vega was terminated on December 16, 2024. *Id.* ¶ 79(4). Vega does not allege that any employee at Fleet communicated to him that he had been terminated.  Rather, he alleges that "Kelly Services informed Plaintiff that Fleet cited 'performance' and that he was 'not signed off on any of the machines' as the reason for termination." Dkt. 28 ¶ 79(4).

## II.    LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). A court must accept a plaintiff's factual allegations as true and must draw all reasonable inferences in the plaintiff's favor. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). Although a complaint "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action" in order to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Because Vega is proceeding *pro se*, the Court must liberally construe his complaint. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). However, the Court need not draw inferences that are "unsupported by facts alleged in the complaint." *Green v. McHugh*, 793 F. Supp. 2d 346, 349 (D.D.C. 2011); *see also Grigg v. Montana Dep't of Justice, et al.*, 2026 WL 1134159, at *2 (D.N.D. Feb. 4, 2026).

## III.   DISCUSSION

### A.  Racial Discrimination

Section 1981 guarantees "[a]ll persons" the same right "to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. "This statutory provision, originally enacted as part of the Civil Rights Act of 1866, 'guards generally against race-based discrimination in the workplace.'" *Katti v. Arden*, 161 F.4th 217, 227 (4th Cir. 2025) (quoting *Lemon v. Myers Bigel, P.A.*, 985 F.3d 392, 399 (4th Cir. 2021)). To plead a § 1981 violation, a plaintiff must plausibly allege "both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Nadendla v. WakeMed*, 24 F.4th 299, 305 (4th Cir. 2022) (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006)). Intentional discrimination under § 1981 is discrimination that "would not have happened *but for* the plaintiff's race." *Id.* (citing *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*,

589 U.S. 327, 341 (2020)) (emphasis added). "Section 1981 claims for racial discrimination are held to a more stringent pleading standard than racial discrimination claims brought pursuant to Title VII," because of § 1981's but-for causation requirement. *Jones v. City of Salisbury, MD*, 2023 WL 5565831, at *5 (D. Md. Aug. 28, 2023) (citing *Comcast Corp.*, 589 U.S. at 340).

Vega claims he would not have been fired but for his race or ethnicity; however, he does not allege sufficient facts to nudge his claim that he was fired because he is Latino from "conceivable" to "plausible." Instead, he relies on a single incident where Tinsley, who he alleges was a "supervisor," called him an "old ass nigger." Dkt. 28 ¶ 23. Yet, Vega concedes that Chambers immediately chastised Tinsley and comforted him for the slur being used. *Id.* ¶ 31. Although Vega alleges (in a conclusory manner) that Tinsley was a supervisor, he fails to allege that she had hiring or firing authority; that she influenced the decision to fire him; or that anyone who possessed hiring or firing authority knew about the incident that occurred on November 6, 2024.[2] Instead, he admits that Rucker—who had hiring and firing authority—told Vega that he would be fired if he did not obtain the necessary signs offs to independently operate the equipment necessary to do his job. *Id.* ¶¶ 59–61.

Given all of this, the Second Amended Complaint lacks a sufficient factual foundation to infer that Fleet or one of its employees with hiring and firing authority terminated Vega because he is Latino. The Court cannot infer that Fleet (or anyone else) fired Vega because of his race

---

[2] When there are no allegations that the employer harbored racial animus, an employee can still state a § 1981 discrimination claim against the employer by pleading that: (1) a supervisor harbored unlawful, racial animus, (2) that supervisor performed an act intended to cause an adverse employment action, and (3) the employer merely rubber-stamped his supervisor's recommendation. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011); *Hayes v. Wall Recycling, LLC*, 729 F. Supp. 3d 553, 560 (E.D.N.C. 2024); *Ashanti v. City of Richmond Sch. Bd.*, 2023 WL 1110300, at *9 (E.D. Va. Jan. 30, 2023). This is known at the "cat's paw" theory of liability. The Second Amended Complaint contains no allegations to support "cat's paw" liability.

simply because a single employee used a slur on one occasion. *See Williams v. Hous. Opportunities for Persons with Exceptionalities*, 777 F. App'x 451, 455 (11th Cir. 2019) ("[A] reasonable jury could not find that [supervisor] fired [employee] because of his race based only on [a prior statement that she couldn't "stand his black ass"] because [that statement] bore no relation to the termination decision."); *cf. Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 171 (4th Cir. 2020). This is especially so where: (1) there are no allegations that Fleet (or an employee with hiring and firing authority) knew about the use of the n-word, and (2) Vega admits that Fleet singled him out for his "good work" and gave him a gift shortly after the incident.

For these reasons, Vega fails to state a § 1981 racial discrimination claim.[3]

## B. Retaliation

"Section 1981 encompasses retaliation claims for opposing race discrimination in employment." *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x. 167, 172, (4th Cir. 2020) (citation and internal marks omitted). "An employee opposes race discrimination when [he] 'communicates to [his] employer a belief that the employer has engaged in' such discrimination." *Id.* "An employee is protected from retaliation not only for reporting 'employment actions actually unlawful under [§ 1981] but also employment actions she reasonably believes to be unlawful.'" *Id.* (quoting *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015)). "And in line with other § 1981 claims, to state a § 1981 retaliation claim, a plaintiff must allege facts rendering it plausible that, but for [his] participation in protected activity, [he] would not have suffered a materially adverse action." *Jones*, 2023 WL 5565831, at *8.

---

[3]    Vega pled claims for "wrongful termination" and interference with "making and enforcing contracts," Dkt. 28 at 31–33, both of which are analyzed under the umbrella of racial discrimination.

Here, Vega fails to allege that he told Fleet that it had engaged in *racial* discrimination. Instead, Vega alleges in vague and general terms that he was called into Rucker's office to assist in a "harassment complaint investigation" involving Chambers and another temporary employee named "Tre." *Id.* ¶¶ 56–58. He does not allege what he said to Rucker or what type of harassment was being discussed at the December 2nd meeting. If, for example, Chambers had been accused of sexually harassing Tre and Rucker questioned Vega about *that* type of harassment, then § 1981 would not be implicated because § 1981 only applies to retaliation for opposing *racial* discrimination, not discrimination based on sex, sexual orientation, religion, age or ability. As the Second Amended Complaint does not say that Vega complained about racial discrimination at the December 2nd meeting with Rucker, the Court cannot say that Vega engaged in any protected activity under § 1981.

Accordingly, Vega's retaliation claim must be dismissed.

### C.  Hostile Work Environment

An employer also contravenes § 1981 by requiring an employee to work in an environment that is hostile to his race. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65–67 (1986) (citing 42 U.S.C. § 2000e–2(a)(1)). The elements of a hostile work environment claim "are the same under either § 1981 or Title VII" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001); *see also Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). To succeed on a hostile-work-environment claim a plaintiff must show that there is: "(1) unwelcome conduct; (2) that is based on the plaintiff's ... [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 407 (4th Cir. 2022); *see also Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011)).

A hostile work environment claim fails unless "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.*; *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). A hostile-work-environment claim almost always "involves repeated conduct," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); however, a single incident of harassment can constitute a hostile work environment if it is "extremely serious." *Boyer-Liberto*, 786 F.3d at 277; *see also Chapman v. Oakland Living Ctr., Inc.*, 48 F.4th 222, 231 (4th Cir. 2022) ("[A] single use of the n-word or a similar racial slur by a supervisor *can* engender a hostile work environment.") (Emphasis added).[4] The ultimate inquiry, though, is whether the conduct is so "extreme" as to "amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Vega alleges a single incident where a supervisor referred to him as an "old ass nigger."[5] Dkt. 28 ¶ 23. But he also alleges that another supervisor immediately chastised the person who uttered the slur and comforted him for the n-word being used against him. *Id.* ¶ 31. He also alleges that after the slur was used, Rucker gave him a gift for "doing good work." *Id.* ¶¶ 49–55. Under these specific circumstances, Vega has failed to allege misconduct that was so "extreme" as to alter his terms of employment. *See*, *e.g.*, *Hubbard v. S.C. Dep't of Mental Health*, 2023 WL 5666202, at *2 (4th Cir. Sept. 1, 2023); *Belton v. City of Charlotte*, 175 F. App'x. 641, 656–57 (4th Cir.2006); *Skipper v. Giant Food Inc.*, 68 F. App'x 393, 399 (4th Cir. 2003). Vega has also failed to allege that

---

[4] The Fourth Circuit has held that a single use of the n-word by a supervisor *can* constitute a hostile work environment; but it has not held that a single use of the n-word *always* constitutes a hostile work environment. Context still matters when deciding whether racial misconduct is so severe as to alter the conditions of employment.

[5] Interestingly, Vega fails to allege Tinsley's or Chambers' race, instead merely stating they are "non-Latino." Dkt. 28 ¶¶ 18, 25.

Fleet or anyone with hiring and firing authority knew about the incident, and therefore, has failed to impute any racial misconduct to his employer. *See Skipper*, 68 F. App'x at 399 (affirming dismissal of plaintiff's hostile work environment claim for failing to allege that the employer "knew or should have known about such harassment and failed to address it."); *see also Bazemore v. Best Buy*, 957 F.3d 195, 202 (4th Cir. 2020). Finally, his general and conclusory allegations that Chambers and Tinsley "ignored him," "communicated with him in a negative tone of voice," and did "not make eye contact with him" fall well short of establishing a racially hostile work environment. *Id.* ¶¶ 34–35.

Accordingly, Vega's hostile work environment claim must also be dismissed.[6]

## IV. CONCLUSION

For these reasons, Fleet's motion to dismiss (Dkt. 33) is **GRANTED** and Vega's second amended complaint is **DISMISSED WITH PREJUDICE**.[7] All other motions are **DENIED AS MOOT**.

The Clerk shall close this case and mail a copy of this Memorandum Opinion & Order to all counsel of record and to Plaintiff at his last known address.

IT IS SO ORDERED.

---

[6]     Vega pled claims for "racial harassment" and "hostile work environment, Dkt. 28 at 26 – 29, both of which are analyzed as hostile work environment claims.

[7]     Because Defendants have each already filed three motions to dismiss, *e.g.* Dkts. 10, 21, 33, and Vega's second amended complaint is still deficient, it would be unduly prejudicial to Defendants to give Vega another bite at the apple. *See*, *e.g.*, *George v. Pathways to Hous., Inc.*, 2012 WL 2512964, at *8 (S.D.N.Y. June 29, 2012) ("allowing Plaintiff to amend his Complaint for a third time would be unduly prejudicial to Defendants who have already expended significant time and resources to brief the instant motions to dismiss").

Entered this __25th__ day of June, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE